Filed 6/23/25  P. v. Wesson CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B335764 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A652569) |
| v. | |
| SHONDESS LIN WESSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector E. Gutierrez, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, Theresa A. Patterson and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

# INTRODUCTION

In 1989 Shondess Lin Wesson pleaded guilty or no contest (the record is not clear which) to first degree murder and second degree robbery and admitted the allegation a principal was armed with a firearm. The trial court sentenced Wesson to a prison term of 25 years to life.

Thirty-two years later, in 2021, Wesson filed a petition for resentencing under Penal Code section 1172.6.[1] The superior court found Wesson stated a prima facie case for relief, issued an order to show cause, and held an evidentiary hearing, where the People presented evidence, including statements Wesson made at his parole hearing in 2016. The superior court found beyond a reasonable doubt that Wesson was the actual killer and that he was guilty of murder under the current law and denied the petition.

Wesson argues the superior court erred in relying on statements he made at his parole hearing to conclude he was the actual killer. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Wesson Pleads to First Degree Murder and Second Degree Robbery*

According to the testimony at the preliminary hearing, one evening in January 1989 Wesson and four other individuals decided to "jack" (meaning rob) Trent Allen at a gas station. One of the individuals pulled out a "magnum" and took Allen's car,

---

[1]     Undesignated statutory references are to the Penal Code.

watch, and gold necklace. A witness heard gunshots and saw two men leaving the gas station, the second man shooting the first with a handgun. The victim, later determined to be Allen, fell to the ground, and the shooter walked away. Allen died from multiple gunshot wounds.

Wesson pleaded guilty or no contest to first degree murder (§ 187, subd. (a)) and second degree robbery (§ 211) and admitted that, in committing the crimes, a principal was armed with a firearm, within the meaning of section 12022, subdivision (a). The trial court sentenced Wesson to a prison term of 25 years to life pursuant to the plea agreement.[2]

### B. *Wesson Admits He Shot Allen*

In 2016 Wesson testified before a panel of commissioners of the Board of Parole Hearings. This is what Wesson told the panel occurred on the night of Allen's murder: Wesson and his friends saw Allen at a gas station, and one of Wesson's friends pulled out a gun to rob Allen. Allen recognized Wesson from elementary school and called out to him. Wesson grabbed a gun, ran after Allen, and shot him several times in the back. Wesson told the panel that he shot Allen because he was "[s]cared of going back to" the California Youth Authority and that he "intended to kill" Allen. Wesson also admitted he knew that night Allen had died. Wesson explained that, in a previous statement to a therapist, he minimized his role because he "was not accepting [his] full role in that crime." The panel denied Wesson parole and set the next parole suitability hearing to occur in 10 years.

---

[2] The court imposed and stayed execution of terms on the robbery conviction and the firearm enhancement.

3

C.    *The Superior Court Denies Wesson's Petition for Resentencing Under Section 1172.6*

In 2021 Wesson filed a petition for resentencing under section 1172.6 by checking boxes on a form petition stating he was eligible for relief and asking the court to appoint counsel to represent him.  Among other allegations, Wesson checked the box next to the statement "I was convicted of 1st degree felony murder and I could not now be convicted because of changes to Penal Code § 189, effective January 1, 2019, for the following reasons" and, beneath that statement, the box next to the statement "I was not the actual killer."[3]  The superior court appointed counsel, the People filed an opposition to the petition, and Wesson filed a reply.  The court found Wesson stated a prima facie case for relief, issued an order to show cause, and scheduled an evidentiary hearing.  The People submitted, among other things, the transcript of Wesson's parole hearing in 2016.  Counsel for Wesson objected to the court admitting the parole hearing transcript.

At the evidentiary hearing, counsel for Wesson argued the parole proceedings rose to a "level of coercion" that rendered Wesson's statements involuntary under Evidence Code section 1204 and unreliable under Evidence Code section 1220.[4]

---

[3]    Wesson also checked boxes next to allegations that he did not, with the intent to kill, aid or abet the actual killer and that he was not a major participant in the felony or act with reckless indifference to human life during the course of the crime or felony.

[4]    Evidence Code section 1204 provides a "statement that is otherwise admissible as hearsay evidence is inadmissible against

Citing *People v. Myles* (2021) 69 Cal.App.5th 688 (*Myles*), the superior court admitted the parole hearing transcript. The court described the transcript as "chilling and tragic in profound respects." The court stated Wesson admitted responsibility for Allen's murder, which showed he had a motive "above and beyond robbery for this decision to point a gun at Trent Allen and shoot him multiple times in the back as he ran away." The court recited Wesson's admission: "'The truth is, I intended to kill Mr. Allen.'" The superior court found Wesson's sworn statement before the parole board "compelling evidence as to [his] culpability as the actual perpetrator and the person who personally . . . killed Trent Allen in 1989." The court denied Wesson's petition under section 1172.6, and Wesson timely appealed.

## DISCUSSION

Wesson contends the superior court erred in relying on statements he made at his parole hearing because, according to Wesson, those statements "should not be admissible as substantive evidence of guilt at a subsequent criminal proceeding, including an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3)." He relies on *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*), where the Supreme Court held testimony by a probationer at a probation revocation

---

the defendant in a criminal action if the statement was made . . . under such circumstances that it is inadmissible against the defendant under the Constitution of the United States or the State of California." Evidence Code section 1220 is the hearsay exception for a party opponent.

hearing "is inadmissible against the probationer during subsequent proceedings on the related criminal charges" (*id.* at p. 889), a rule known as the "*Coleman* use-immunity rule."[5] (*People v. Weaver* (1985) 39 Cal.3d 654, 658; see *People v. Rodriguez* (2025) 110 Cal.App.5th 458, 467 (*Rodriguez*). Wesson seeks to extend "use immunity grounded in California's constitutional guarantee against self-incrimination" to evidentiary hearings under section 1172.6, subdivision (d)(3). As Wesson acknowledges, however, the weight of the authority does not support his argument. We follow that authority.

---

[5] The term "use immunity" refers to "'immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom.'" (*People v. Cooke* (1993) 16 Cal.App.4th 1361, 1366; see *People v. Knight* (2015) 239 Cal.App.4th 1, 7 ["'Use immunity rules apply where there is a compulsive sanction against exercise of the privilege against self-incrimination and where the policy of law favors full disclosure or discussion by the accused.'"].) Use immunity "prevents a prosecutor from using the immunized testimony against the witness" and "provides sufficient protection to overcome a Fifth Amendment claim of privilege." (*Cooke*, at p. 1366.)

A.     *Applicable Law and Standard of Review*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly narrowing the felony-murder exception to the malice requirement for murder. (*People v. Oyler* (2025) 17 Cal.5th 756, 835; *People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*); *People v. Arellano* (2024) 16 Cal.5th 457, 467-468; *People v. Curiel* (2023) 15 Cal.5th 433, 448-449; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 [felony murder]; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 [natural and probable consequences].)  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on a person's participation in a crime and requires proof of malice to convict a defendant of murder, except under the revised felony-murder rule.  (§§ 188, subd. (a)(3), 189, subd. (e); *Patton*, at p. 558; *Arellano*, at pp. 467-468; *Curiel*, at pp. 448-449.)  Effective 2022, the Legislature amended section 1172.6 to apply to persons convicted of "attempted murder under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); see *Patton*, at p. 558; *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)

Section 1172.6 authorizes a person convicted of felony murder, murder under the natural and probable consequences doctrine, or attempted murder under the natural and probable consequences doctrine, to petition the superior court to vacate the conviction and resentence the defendant on any remaining counts if he or she could not now be convicted of murder or attempted murder because of the legislative changes to the definitions of murder.  (See *People v. Oyler*, *supra*, 17 Cal.5th at p. 835]; *People*

7

*v. Arellano*, *supra*, 16 Cal.5th at pp. 468-469; *People v. Curiel*, *supra*, 15 Cal.5th at pp. 449-450.)  If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (b)(3); *Patton*, *supra*, 17 Cal.5th at p. 562; *People v. Lewis* (2021) 11 Cal.5th 952, 962-963.)  The People must file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1172.6, subd. (c); *People v. Antonelli* (2025) 17 Cal.5th 719, 724; *Patton*, at p. 556.)

Where, as here, the petitioner has made the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subd. (d)(1); *People v. Oyler*, *supra*, 17 Cal.5th at p. 836; *Rodriguez*, *supra*, 110 Cal.App.5th at p. 465.)  At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3); see *Oyler*, at p. 836; *Rodriguez*, at p. 465.) The petitioner and the prosecutor may also offer new or additional evidence "to meet their respective burdens."  (§ 1172.6, subd. (d)(3); see *People v. Gentile, supra*, 10 Cal.5th at pp. 853-854; *People v. Zavala* (2024) 105 Cal.App.5th 366, 373 (*Zavala*).)

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence." (*People v. Reyes* (2023) 14 Cal.5th 981, 988; see *People v. Guiffreda* (2023)

8

87 Cal.App.5th 112, 125; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)  "Under this standard, we review the record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*Reyes*, at p. 988, internal quotation marks omitted; see *People v. Davis* (2024) 107 Cal.App.5th 500, 509; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591 (*Mitchell*)).  "'Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.'"  (*Davis*, at p. 509; see *Guiffreda*, at p. 125; *People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

"The admission of evidence is usually reviewed for an abuse of discretion [citation], but a court abuses its discretion when it misapprehends the pertinent law [citation].  Whether use immunity exists" is a question of law "we review de novo." (*People v. Duran* (2022) 84 Cal.App.5th 920, 927-928 (*Duran*); accord, *Zavala*, *supra*, 105 Cal.App.5th at p. 373.)

B.    *The Superior Court Did Not Err in Admitting Statements Wesson Made to the Parole Board*

As discussed, section 1172.6, subdivision (d)(3), authorizes the parties to introduce "new or additional evidence" at the evidentiary hearing.  "It is well settled that a defendant's statements in a parole risk assessment report and testimony at a parole hearing fall within the ambit of "'new or additional evidence.'""  (*Zavala*, *supra*, 105 Cal.App.5th at p. 373; see *Rodriguez*, *supra*, 110 Cal.App.5th at p. 466; *Duran*, *supra*, 84 Cal.App.5th at p. 927; *Mitchell*, *supra*, 81 Cal.App.5th at p. 586; *People v. Anderson* (2022) 78 Cal.App.5th 81, 93; *Myles*, *supra*, 69 Cal.App.5th at p. 703.)

Wesson argues that using statements he made at his parole hearing against him at the evidentiary hearing under section 1172.6, subdivision (d)(3), "implicates substantially the same set of concerns identified by the California Supreme Court in *Coleman*," *supra*, 13 Cal.3d 867.  Wesson urges us to follow the dissenting opinion in *Mitchell*, *supra*, 81 Cal.App.5th 575, which concluded admitting the defendant's testimony before the parole board was "fundamentally unfair" under *Coleman*.  (*Mitchell*, at p. 604 (dis. opn. of Stratton, P. J.)  We agree with the majority opinion in *Mitchell*, and every court that has addressed the issue, *Coleman* does not apply to evidentiary hearings under section 1172.6, subdivision (d)(3).

In *Coleman*, *supra*, 13 Cal.3d 867 the defendant was on probation when he committed a crime that justified revoking his probation and filing independent criminal charges.  (*Id.* at pp. 871-872.)  After moving unsuccessfully to continue the probation revocation hearing until after the criminal proceedings (on the new case) had concluded, the defendant argued "the revocation of

10

his probation in advance of trial denied him procedural due process because he was forced to forego his opportunity to testify in his own behalf at his revocation hearing in order to avoid incriminating himself at his pending trial." (*Id.* at pp. 872-873.) The Supreme Court held "permitting a probationer's testimony at his revocation hearing to be used against him at the subsequent criminal trial for the very misconduct at issue in the revocation proceeding" would "adversely affect[ ]" at least two of "the many and varied policies underlying the privilege against self-incrimination." (*Id.* at p. 875.) First, the prosecution's heavy burden in a criminal trial "to prove through its own investigation the guilt of the defendant may be substantially lightened if the prosecution is allowed to take advantage of the defendant's testimony at a prior probation revocation hearing." (*Id.* at p. 876.) Second, "when an alleged probation violation also constitutes a criminal offense for which the probationer might subsequently be prosecuted," the probationer may be forced "to choose between the privilege [against self-incrimination] and his opportunity to be heard at his revocation hearing." (*Id.* at p. 878.) The Supreme Court in *Coleman* declared "a judicial rule of evidence" that, upon a timely objection, "the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges," except for limited impeachment or rebuttal purposes. (*Id.* at p. 889.)

The concerns in *Coleman* are not present in proceedings under section 1172.6 because the Fifth Amendment privilege against self-incrimination does not apply at the evidentiary

11

hearing. (See *Rodriguez, supra*, 110 Cal.App.5th at p. 466 [defendant "was not protected by the privilege against self-incrimination during his section 1172.6, subdivision (d)(3) evidentiary hearing, and incriminating statements he made during his parole proceedings were therefore admissible"]; *Zavala, supra*, 105 Cal.App.5th at p. 376 [same]; *Duran, supra*, 84 Cal.App.5th at p. 930 [same]; *Mitchell, supra*, 81 Cal.App.5th at p. 589 [same]; *Myles, supra*, 69 Cal.App.5th at p. 706 [same].) "The Fifth Amendment privilege against self-incrimination protects persons from being compelled by "'governmental coercion'" to serve as witnesses against themselves in "'any *criminal case*.'" [Citation.] A section [1172.6] hearing, however, "'is not a trial *de novo* on all the original charges." [Citation.] Rather, it is a *postconviction* proceeding "due to the Legislature's inclusion of section [1172.6] in Senate Bill No. 1437 . . . , [as] an "act of lenity" [citation], allowing for the retroactive application of the new law governing accomplice liability for felony murder [citation] for defendants already serving valid sentences for murder."'" (*Myles*, at pp. 705-706; accord, *Rodriguez*, at p. 467; *Zavala*, at p. 376; *Mitchell*, at p. 588; see *Duran*, at p. 930 ["the section 1172.6 evidentiary hearing where [the] defendant's . . . parole risk assessment statement was used is . . . neither a subsequent retrial nor a new sentencing"].)

In addition, as several courts have pointed out, "the Fifth Amendment protects individuals from government coercion." (*Myles, supra*, 69 Cal.App.5th at p. 706.) But Wesson, not the government, initiated the petition process under section 1172.6. (See *Rodriguez, supra*, 110 Cal.App.5th at p. 467 [section 1172.6 requires defendants "seeking its "'ameliorative benefits'" to initiate the process by filing a petition"]; *Mitchell, supra*,

12

81 Cal.App.5th at p. 589 [the resentencing process under section 1172.6 "could not even begin until [the defendant] gave the court *his* statement, under oath, about his role in the crime to which he pleaded guilty"]; *Myles*, at p. 706 [defendant "was not compelled to file a section [1172.6] petition"].)

Wesson also argues that, even if the privilege against self-incrimination "is not implicated" here, "basic principles of procedural fairness surely *are*." Wesson asserts it would be "*unfair*" to require the defendant to choose between "'self-accusation, perjury or injurious silence.'" The unfairness Wesson suggests, however, is one that precludes him from, on the one hand, encouraging the parole board to grant him parole by fully accepting responsibility for his crimes while, on the other hand, seeking a reduction in his sentence by minimizing his role in his crimes. Precluding Wesson from telling two versions of what happened to obtain a benefit (or two) is not unfair. (See *Mitchell*, *supra*, 81 Cal.App.5th at p. 590 ["It would be unjust for [the defendant] to gain an advantage his sworn description shows he does not merit."].)

Indeed, the Supreme Court in *Coleman*, *supra*, 13 Cal.3d 867 stated the use-immunity rule did not apply where the defendant's testimony from the probation revocation hearing and the defendant's testimony at the criminal proceeding "are so clearly inconsistent as to warrant the trial court's admission of the revocation hearing testimony or its fruits in order to reveal to the trier of fact the probability that the probationer has committed perjury at either the trial or the revocation hearing." (*Id.* at p. 889.) Wesson stated in his petition under penalty of perjury he was not the actual killer. He stated under oath at his parole hearing that he intended to and did kill Allen and that he

13

shot Allen multiple times. That's a pretty clear contradiction. Thus, even under *Coleman*, the superior court did not err in admitting Wesson's statements at his parole hearing "for purposes of impeachment or rebuttal." (*Ibid.*; see *Duran*, *supra*, 84 Cal.App.5th at pp. 931-932 [defendant's statement in a parole risk assessment report was "'clearly inconsistent' with a disclaimer of an intent to kill [citation], and hence was admissible even if we assume that *Coleman* applies"]; see also *Coleman*, at p. 892 [privilege against self-incrimination "does not . . . encompass a right of an accused to lie in his own behalf at trial"].)

C.    *The Superior Court Did Not Err in Denying Wesson's Petition Under Section 1172.6*

A defendant who was the actual perpetrator of murder or attempted murder is generally ineligible for relief under section 1172.6. (§ 189, subd. (e)(1); see *People v. Jasso* (2025) 17 Cal.5th 646, 688 [actual killer is ineligible for relief under section 1172.6]; *People v. Strong*, *supra*, 13 Cal.5th at p. 710 [same]; *People v. Garcia* (2022) 82 Cal.App.5th 956, 973 ["As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer.'"].) The statements Wesson made at his parole hearing established he shot and killed Allen. Substantial evidence supported the superior court's finding beyond a reasonable doubt Wesson was the actual killer, and the court did not err in ruling he was ineligible for relief under section 1172.6.

## DISPOSITION

The order denying Wesson's petition under section 1172.6 is affirmed.


SEGAL, Acting P. J.


We concur:



FEUER, J.



STONE, J.